Commonwealth *v.* Sutton, Appellant.

Argued November 30, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Albert Blumberg*, with him *McClenachan, Blumberg & Levy*, for appellant.

*Ernest L. Green*, Assistant District Attorney, with him *J. Harold Hughes*, Assistant District Attorney, *Ralph B. D'Iorio*, First Assistant District Attorney, and *Jacques H. Fox*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, January, 2, 1962:

The defendant, John Mason Sutton, alias Gene Hurley, was tried and convicted in Delaware County, Pennsylvania, of first degree murder for the gunshot killing of one Ina Persinger. His punishment was fixed at life imprisonment. He appeals from the judgment of conviction and sentence.

There were no eyewitnesses to the killing, which occurred on June 1, 1957. The Commonwealth's case depended entirely upon circumstantial evidence plus testimony of certain admissions allegedly made by the defendant to a fellow prisoner, one Wasyl Towber, in the month of September, 1958, in the Delaware County Prison where they were both incarcerated while the defendant was awaiting trial. The motive for the killing, according to the Commonwealth's theory, was that the victim had rejected the defendant as her lover, which he bitterly resented. The defendant demurred to the evidence offered by the Commonwealth, which was overruled by the court. The defense offered no testimony.

Without the testimony of the witness, Towber, there is serious question that the evidence presented was sufficient to sustain a conviction. The Commonwealth had no other available testimony to fix defendant's presence at, or near, the scene of the killing within hours of the pertinent time. In short, Towber's testimony was vital to the Commonwealth's case. He testified, inter alia, that the defendant told him, while they were in prison together, that on the night of the killing the defendant had visited the victim's apartment; that they got into a quarrel and he "messed her up." Also, that the defendant had tried to secure Towber's services in obtaining an alibi witness to be used at the trial on his behalf.

Towber had a long and unsavory criminal record, the details of which the district attorney properly at-

tempted to bring to the attention of the jury during his direct examination in order that they might consider his background in determining the credibility of the witness. It included convictions of serious felonies, such as burglary, armed robbery and prison break.

At the time Towber testified in the present case, he was awaiting sentence in Delaware County upon a conviction for the crime of burglary. He was originally convicted of this crime by a jury and given a sentence of from five to ten years in a state penal institution. However, this conviction was set aside by the Pennsylvania Superior Court and a new trial ordered. When subsequently arraigned on this indictment for the second time, he elected to plead guilty and not stand trial. That occurred on January 11, 1960, and his sentence was deferred. He had not as yet been sentenced upon this conviction when he testified in the trial of the present case on March 29, 1960. In fact, he had not as yet been sentenced when this appeal was argued on November 30, 1961.

During the course of his direct examination in the present issue, he was specifically asked if, as of then, there were any other convictions for which he had not yet been sentenced. The following occurred: "Q. Are there any convictions for which you have not yet been sentenced? A. I got a new trial in this county here, sir; I haven't been sentenced on that yet." BY THE COURT: "Q. Now wait a minute. You know me. don't you? A. Oh, yes, I got sentenced here, sir; I got five to ten years in the Eastern State. Q. Yes, but that is finished. A. I have been sentenced on it; yes, sir. Q. Didn't you come in here and plead guilty and I gave you five to ten years? A. Yes, sir. Q. In the penitentiary? A. Yes, sir; I forgot."

The above answers of the witness were in the main part false, or at least erroneous. Likewise, the statement of the court, "Didn't you come in here and plead

guilty and I gave you five to ten years?" was incorrect. Defendant's counsel was not aware of the true facts in regard to this until after the verdict was recorded. As pointed out hereinbefore, when this testimony was given, Towber was in fact still awaiting sentence on the burglary conviction. The trial judge was either unfamiliar with the true facts, or had inadvertently forgotten that the original judgment of conviction, upon which sentence had been imposed, was set aside. The district attorney sat silent and did not correct, or attempt to correct, the erroneous understanding of the trial judge. Neither did he make any effort to bring to the attention of the jury that the answers of the witness were, in fact, not true or correct.

This presents a situation of such serious import to render the grant of a new trial mandatory.

Towber's testimony was of vital importance. His credibility and the weight to be given his testimony was probably the most important question the jury had to resolve in this case. The fact-finding body had the right to know that this important witness was still awaiting sentence on a conviction for a serious charge, and to consider this substantial fact in determining his truthfulness. It may well be as the Commonwealth argues that the record of one more conviction, added to the list already in evidence, would not further impugn the credibility of the witness. This is not the point. The possibility of the existence of an ulterior motive in volunteering testimony in aid of the Commonwealth's case was a salient factor. Importantly also, the incorrect testimony bolstered his credibility and tended to give his testimony greater weight in the eyes of the jury. The defendant was thus unduly prejudiced.

Since this case must unfortunately be retried, there is another matter requiring discussion. The trial judge, in the course of his instructions to the jury, charged that, under the evidence presented, the jury could find

that this was murder by lying in wait as defined by the Act of June 24, 1939, P.L. 872 §701, as amended, 18 PS §4701 (Supp.).

The requisite elements of "lying in wait" were enunciated by this Court in the case of the *Commonwealth v. Mondollo,* 247 Pa. 526, 93 Atl. 612 (1915), at p. 527 wherein we approved as a correct statement of the law the following: " ' "Murder by lying in wait practically describes itself, that is, where one person lays in ambush or secretes himself and awaits an opportunity to take the life of his victim. The law says there are about three elements necessary to constitute the crime of murder in the first degree by lying in wait, they are: first, waiting; second, watching; and third, secrecy. If a person waits and watches an opportunity to kill another, and by secrecy it does not mean that he necessarily secretes or hides himself but that he formed in his own mind the secret intention to take the life of his victim—if those three elements are present and are established to the satisfaction of the jury, and life is taken under those circumstances the man who takes the life is guilty of murder in the first degree by lying in wait." ' " See also, *Commonwealth v. Mulferno,* 265 Pa. 247, 108 Atl. 639 (1919).

In the instant case, the only record evidence concerning the circumstances incident to the killing was the testimony of Towber, who stated: "He (the defendant) was worried about her, he kept telling me. And he went to the apartment and waited for her, he said. And John said that he waited about two o'clock in the morning, or three o'clock, and she finally came in and he said he got in a quarrel, and he said he messed her up, and he left, he said he went home and got some money and his father's car and left. I don't know, I only know what he told me, that is all."

In our opinion, this evidence would not sustain a conviction of murder by lying in wait.

..All of the other assignments of error are without merit.

.: Judgment reversed and a new trial ordered.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

.: I dissent. Trowbar's mistake was a harmless error and Mr. Justice MUSMANNO and I agree that the evidence was sufficient to find that the Commonwealth proved a case of lying in wait, although the jury could also and more preferably find that the killing was wilful, deliberate and premeditated.